Enri Lemus, Alec Adams appearing for appellant, Arnold Graff appearing for appellee. Good afternoon, your honor. Okay. Mr. Adams, could you note your appearance, please? Yes. Attorney Alec Adams appearing on behalf of the appellant, Maria Cuevas Lemus. Okay. I forgot to mention at the beginning that you have 15 minutes, but as the appellant, you have the privilege of saving some of your time for rebuttal. Do you want to reserve some time for rebuttal? Yes, your honor. I'd like to reserve approximately three minutes for rebuttal. Three minutes. Okay. Go ahead, please. Thank you, your honor. As the court knows and has set forth in my opening as well as reply brief, the court may use its inherent powers to protect the integrity by vacating a judgment which was obtained by fraud. We note in the reply brief that we believe the declaration that was filed by the appellee's real estate agent, Mike Glassie, was essentially undervalued the real property. And the property was worth far more than the declaration set forth. The reason why we believe that this is a fraud against the court is because the entire bankruptcy framework and laws are structured so that debtors can essentially get a fresh start, pay their debts, their creditors rather, and then exit from bankruptcy with a clean slate or a fresh start. One of the roles, as we know, the bankruptcy referee essentially is collecting, valuing, and determining what assets the debtor has. And if in this particular case my client is stating that she had a community property interest in the subject real property, which the appellee has woefully undervalued, then you can see how the bankruptcy referee is, how can I say it, misled or somewhat hamstrung in terms of. Well, let me ask you this. In Ms. Lemus's original schedules, she said she wasn't married, and she also said she didn't have any community property interests. So my question is, then the debtor changed her story and says she is married, does have community property interests. So which one was the bankruptcy judge supposed to believe? Your Honor, I obviously argued that he was supposed to believe the latter. But there is this language barrier that my client is relying upon document preparers, other family members who are limited to speaking Spanish, in terms of how she is to complete the papers. You note that, you know, at the time that the petition was filed, you know, she was unrepresented by counsel. That was a voluntary petition that she filled out herself with the assistance of family members or document preparers. So I really can't address or answer the issue as to why initially she stated that she was unmarried and then subsequently that she was married. But the court will note that she did provide a valid marriage certificate and had been married to Evaristo Avila since 1992. As I was stating, and that is, is that, you know, the fraud is not so much focused, according to the case law, as against the injury to my client, Ms. Cuevas-Limas, but rather to the court. And it's a fraud against the court, and the court is, I would hope, judicious and quick to preserve its own integrity. And that's why… I'm sorry, let me jump in again. The fraudulent representation had to do with the value of the property. Is there any other fraud that you contend the lender committed? Well, I think that the lender basically committed this fraud with regard to the valuation of the property, but also turned around a few months later and listed the property for, in essence, $968,000, and then gave a cut, a price cut, when it didn't sell, of $945,000. And subsequently, it was the borrower or lender, Peli Arturo Martinez, who ultimately purchased the property for about $551,517. So in essence, he did quite well for himself. At the same time, frustrating through his deliberate undervaluing of the property, the bankruptcy referee's ability to collect value and gather all the assets of the bankruptcy petitioner, Ms. Cuevas-Limas, so that her creditors could either be made whole or paid some portion of the debts that she had incurred from them. So can I interrupt you for a second there? It sounds like you're arguing on behalf of the creditors and not Ms. Limas that she wasn't harmed by this fraud because it was a Chapter 7 case and there was a discharge, so she wouldn't have been harmed? No, Your Honor, I respectfully disagree with that view that my client was not harmed. I made the point earlier that the fraud is more focused on the court's integrity and less on the person against whom the harm was done. But in stating what harm, and this is the implied question that you're asking, what possible harm did Ms. Cuevas-Limas suffer, I would say that it was very, very severe harm. First of all, it was her primary residence, and as a consequence of basically losing that, being evicted, she was forced to return to Mexico for shelter. She was deprived of her primary residence. She would have lost it anyway, though, if the property had so much value, the Chapter 7 trustee would have sold it and paid the creditors, right? That doesn't seem like a harm to her. Well, if the property was properly valued by the appellee, that is, its true value, which was about $1.1 million, then there would have been some equity left over, given that my client had a community property estate, which she could have received, even after her creditors had been paid off, if you follow what I'm stating, Your Honor. Didn't you just say that it was listed for sale for $945,000 or $960,000-something, and they couldn't sell it? That is correct. So then how could it have been worth $1.1 million? Well, I'm looking at, right before the hearing started, I looked at the price at which the appellee is listing it, that is, now. He's listing it for $1.1 million. And bear in mind that in the declaration that was submitted by the appellee, there were at least six comparable evaluations of similarly sized, similarly located properties. And all of those properties had higher values. But nonetheless, the appellee basically says that, you know, this property is only worth, you know, X number of dollars. Okay, so how does that apply there to the granting of retroactive relief from the automatic estate to an oldest day? Well, it does because what it does is it puts us back to the point where, okay, my client can then basically say to the bankruptcy referee, and that is, I have this asset of which I have an interest in, and now you can basically take my interest in that and use it to pay my creditors. What prevented her from saying that? Couldn't she have said that at the time that these motions were going on? No, Your Honor, and she could not have said that because after the property was sold, it was then that she realized that this declaration and these comparable sales were not truthful. It was only after the fact. And I understand that, you know, hey, you can't keep going back, you know, as race judicata, so on and so forth, but it was then that the fraud came to light. All right. Thank you for answering my questions. Yes, Your Honor. Sorry to get you off your train of thought. Sorry about that. Okay. And I'm probably violating what Honorable Judge Ferris said in that there's no value in reciting what you've already stated in your brief, but I do want to make the point that the inquiry as to whether a judgment should be set aside for fraud upon the court focuses not so much in terms of whether the alleged fraud prejudges the opposing party, but more in terms of whether the alleged fraud harms the integrity of the judicial process. And that's where, once again, I return to the fact that probate referees are there to basically collect value and then allocate the debts of the petitioner for the benefit of the creditors and thereafter to allow the debtor to get a fresh start in Chapter 7. And that was frustrated, obstructed by this fraudulent declaration that the appellee submitted to the court. Thank you. Okay. All right. You can reserve the rest of your time. Mr. Graff. Yes, thank you. After reading the briefs, hopefully it's become pretty clear that the only person that's been defrauded in this case has been my client, the appellee. We have a situation here where we have multiple bankruptcy filings. We have an unauthorized transfer hours before a Chapter 7 bankruptcy filing with the grand deed recorded after that. And in essence, after all of that, my client has proceeded with his state law remedies and we're still being attacked with what, in my mind, is a baseless appeal. First off, I just want to address some of the issues that my client committed fraud with an appraiser declaration from 2021 to get stay relief in the borrower's first bankruptcy case. First off, the motion to annul was not granted in this case based on any alleged valuation in 2021. The court laid out very clearly why the motion to annul was granted, what factors it considered important, and factored in. Valuation was not even discussed. The equity is not even discussed in that order. Second, what's being alleged here by the appellant is that an appraisal from 2021 is clearly fraudulent because two years later, the property is listed, just listed for sale, at a higher amount. First off, that's not evidence of anything. Clearly, someone's going to try to get what they can in a sale, and two years later, nobody would consider an appraisal from 2021 accurate or persuasive evidence of what the property would be valued today. First off, the claim itself just falls flat. There's no evidence that the declaration was incorrect or improper or wrong, and as one of the judges asked, it was the duty of the appellant, of the borrower, to challenge the value. When that motion for relief was filed, get your own appraiser, do your own research, see if it was correct. Different appraisers are going to have different opinions. But from the record, there's no indication that that was ever done. And again, in the motion to annul, that was not a critical factor for the court. So even if there was an issue, it's irrelevant to the purpose of whether or not this court abused its discretion in finding that the equity is balanced in favor of annulling the stay. It's simply that. It's just a bad-faith argument that's been made by the appellant. Second, there's a claim for the first time in the reply that in April of 2022, the eviction attorney was notified that – that the appellant still had a community interest property, that the borrower had filed for bankruptcy to stop the eviction, and the appellant's community interest had been secured because borrower either transferred or intended to transfer soon after a grant deed. Well, first, there's nothing in the record. There's nothing in the record at all reflecting this verbal notification. In fact, everything – the bankruptcy court clearly pointed out that at no point was any admissible evidence ever submitted by the appellant or for bankruptcy attorney. At no point was any admissible evidence ever submitted. The only admissible evidence was the schedules and the petition that were filed under penalty of perjury, and they indicate the exact opposite of what the appellant is claiming now, that she wasn't married. And it's interesting that opposing counsel said there was a language barrier, and she was confused. Well, she was being helped by her son, right? Her son helped her. That was confirmed at the prior hearing. And the question is, are you married, yes or no? There's really no language barrier to indicate that you can't answer that question correctly. And so for a lot of reasons, none of which had to do with value, the court was able to find that there was no knowledge of any transfer because, remember, the grant deed wasn't recorded until after the bankruptcy case was filed, and there was no indication, direct communication from the appellant at any time until the adversary was filed. So under these circumstances, it's clear that, you know, my client acted in good faith at all times and that there is no these after-asserted stories that are not in the record and are refuted by what little evidence there is in the record submitted by appellant should not be entertained. And then lastly, another big part is this is a Chapter 7 bankruptcy filing. It was done for the purpose to delay. It wasn't done to repay creditors or to reorganize. It was done just to delay, and it was based on an unauthorized transfer done hours before the bankruptcy filing without a grant deed filed. So in this case, if anyone has been wronged, it has been the secured creditor that has done everything right, that got stay relief, that thereafter proceeded with this remedies, and took action quickly when it was finally made aware of the allegations from the appellant. So for this and the reasons stated on the record and in the pleadings, we would respectfully request that the appeal be denied. Any questions from the panel? No. Okay. All right. We'll go back to Mr. Adams. James, you have something like three and a half minutes. Let's wait for the clock. There we go. Three minutes and 35 seconds. Please go ahead. Mr. Adams, before you start, I do have a question for you. This is Judge Corbett. The bankruptcy court made a finding that Ms. Lemus engaged in egregious conduct. I know you focused on the alleged fraudulent declaration of value, but I didn't see a challenge to the egregious conduct finding, and wouldn't the egregious conduct finding have been enough to support the bankruptcy court's decision? I do note that the court did make a finding or make a statement regarding my client's alleged fraud, but I think that what's going on here is that my client and her husband in turn have filed for bankruptcy protection, and the court is, and I say this very, very carefully and measuredly, is extrapolating what her husband has done to what she has done. The argument by opposing counsel is that my client has filed for bankruptcy for no other reason than to delay and frustrate the recovery of the property by a former business partner of my client's husband, Arturo Martinez. What Mr. Evaristo Avila has done, that's on him. I don't think that it should be used or my client should be stigmatized with her husband's conduct. In fact, she did have some legitimate creditors that are listed on the list of creditors in her Chapter 7. It's not just a delaying tactic. Secondly, any disagreements or fallouts between Evaristo Avila, her husband, and his partner, Arturo Martinez, I don't think it's fair to paint my client with the same brush. To answer your question, Your Honor, I think that the court was mistaken in believing that my client engaged in fraud. I want to go back to the points that were stated by opposing counsel, and that is the motion to a no. At no point are we saying that the court abused its discretion in granting relief to the appellee from the state. What we're stating is that the court was misled in believing that the valuations had no effect or reason to not grant the motion to a no and for relief from the state. We're saying that, in essence, the son of my client, Oscar Avila, gave constructive notice to Arturo Martinez that two things, that his mother was filing for bankruptcy two weeks prior to her filing, and that there had been a transfer of interest, community property interest, by Evaristo Avila to his wife. I'm going to stop you because you've gotten to the end of your time. I appreciate your argument. I appreciate both sides' argument. The matter is submitted. Thank you very much. Thank you, Your Honor. Thank you.
judges: Faris, Brand, Corbit